UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| KANISHA LAMPKIN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.: 3:17-cv-231-LCB ) |
| SOCIAL SECURITY ADMINISTRATION, COMMISSIONER, | ) ) ) ) ) |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

On February 12, 2017, plaintiff Kanisha Lampkin filed a complaint (Doc. 1) seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("the Commissioner") pursuant to 42 U.S.C. § 405(g). Plaintiff later filed an amended complaint (Doc. 4). On August 25, 2017, plaintiff filed a Fact and Law Summary (Doc. 10). On September 22, 2017 the Commissioner filed a Fact and Law Summary (Doc. 11). Therefore, this matter is ripe for review. For the reasons stated below, the final decision of the Commissioner is affirmed.

**I.   BACKGROUND**

On September 26, 2013, plaintiff protectively filed an application for a period of disability and disability insurance benefits; plaintiff also filed an

application for supplemental social security income on the same day. (Doc. 10, p. 3). In both applications, plaintiff alleged disability beginning on April 22, 2013. (*Id*.). On July 10, 2015, the administrative law judge ("ALJ"), J. Dennis Reap, conducted a video hearing from Franklin, Tennessee. (Tr. 31). Plaintiff, her attorney, and a vocational expert ("VE") were present at the hearing. (*Id*.). On September 3, 2015, the ALJ issued his decision. In doing so, the ALJ engaged in the five-step sequential evaluation process promulgated by the Commission to determine whether an individual is disabled. (*Id*. at 12-24). The ALJ made the following findings:

1. Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2017. (*Id*. at 14).

2. Plaintiff has not engaged in substantial gainful activity since April 22, 2013, the alleged onset date. (*Id*.).

3. Plaintiff has the following severe impairments: spine disorders; migraines; affective disorder; and anxiety disorder. (*Id*.).

4. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 15).

5. Plaintiff has the residual functioning capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that she is limited to understanding, remembering, carrying out, and performing simple, routine, repetitive 1-2 tasks; occasional interaction with coworkers and supervisors; no public interaction; better working with things rather than people; and can adapt to occasional changes in work routines. (*Id*. at 17).

6. Plaintiff is capable of performing past relevant work as an assembler. This work does not require the performance of work-related activities precluded by plaintiff's RFC. (*Id*. at 22).

7. Plaintiff has not been under a disability, as defined in the Social Security Act, from April 22, 2013 through the date of his decision on September 3, 2015. (*Id*. at 23-24).

Plaintiff requested an appeal to the Appeals Council, which denied her request for review on December 12, 2016. (Tr. 1). At that point, the ALJ's decision became the final decision of the Commissioner. *Henry v. Comm'r of Soc. Sec*., 802 F.3d 1264, 1267 (11th Cir. 2015). Plaintiff then filed this action on February 12, 2017. (Doc. 1).

## II. DISCUSSION

The Social Security Act authorizes payment of disability insurance benefits and supplemental social security income to persons with disabilities. 42 U.S.C. §§ 423, 1381 (2012). The law defines disability as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a).[1]

---

[1] On January 18, 2017, the Social Security Administration significantly revised its regulations regarding the evaluation of medical evidence to determine a disability; those new regulations became effective on March 27, 2017. The Court, however, must apply the regulations in effect at the time that the ALJ entered his decision. *See Ashley v. Comm'r, Soc. Sec. Admin.*, 707 F. App'x 939, 944 n.6 (11th Cir. 2017) ("We apply the regulations in effect at the time of the ALJ's

## A. Standard of Review

The Court must determine whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. *Winschel v. Comm'r of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. (internal citation and quotation marks omitted). "This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Thus, while the Court must scrutinize the record as a whole, the Court must affirm if the decision is supported by substantial evidence, even if the evidence preponderates against the Commissioner's findings. *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264 (11th Cir. 2015); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## B. Five-Step Sequential Evaluation

The Social Security Administration has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1. Is the claimant engaged in substantial gainful activity? If the answer is

---

decision."). Because the ALJ entered his decision on September 3, 2015, the Court will apply the regulations in place at that time.

"yes," the claimant is not disabled. If the answer is "no," proceed to the next step. *Id.*

2. Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significant limits his or her ability to perform basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step. *Id.*

3. Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step. *Id.*

4. Does the claimant have the RFC to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step. *Id.*

5. Even if the claimant cannot perform past relevant work, does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled. *Id.*

The claimant bears the burden of proof with respect to the first four steps. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018). The burden then shifts to the Commissioner at the fifth step to prove the existence of jobs in the national economy that the claimant is capable of performing; however, the burden of proving lack of RFC always remains with the claimant. *Id*.

C. **Plaintiff's Contentions**

Plaintiff asserts that the ALJ erred in two ways: (1) improperly discrediting

her complaints of disabling back pain; and (2) failing to articulate good cause for giving little weight to the opinions of her treating physician. The Court will address each contention in turn.

### 1. Complaints of disabling back pain

The ALJ determined that plaintiff had mild disorders of her lumbar spine. (Tr. 19). However, as part of his RFC finding, the ALJ determined that, while plaintiff's medically determinable impairments – including her lumbar spine disorder – could reasonably be expected to cause some of her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible. (Tr. 18). Plaintiff asserts that, in making this finding, the ALJ did not fully credit her allegations of chronic debilitating back pain. (Doc. 10, p. 6). In particular, plaintiff argues that the ALJ's reasons for his negative credibility findings with respect to her reported symptoms of back pain were not supported by substantial evidence. (*Id*. at 5). The Court disagrees.

Where a claimant attempts to establish disability, in part, based on subjective complaints of pain and other symptoms, she must show (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain arising from that condition; or (b) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the claimed pain. *Wilson v. Barnhart*, 284

F.3d 1219, 1225 (11th Cir. 2002); 20 C.F.R. §§ 404.1529(a), 416.929(a). If the objective medical evidence does not confirm the severity of the alleged pain, but indicates that a medically determinable impairment could reasonably be expected to produce the alleged symptoms (*i.e.*, 2(b)), the ALJ must evaluate the intensity and persistence of the claimant's symptoms and the extent to which they limit the claimant's capacity for work. 20 C.F.R. §§ 404.1529(c), 416.929(c). In doing so, the ALJ must necessarily make credibility determinations regarding a claimant's reports of pain or other symptoms; if the ALJ discredits a claimant's subjective testimony, he must articulate his reasons for doing so. *Wilson*, 284 F.3d at 1225.

In evaluating the intensity and persistence of a claimant's symptoms, the ALJ will consider information submitted about same, including the individual's daily activities; location, duration, frequency, and intensity of the pain or other symptoms; precipitating and aggravating symptoms; type/dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; treatment, other than medication, the claimant has received for relief of pain or other symptoms; other measures used to relieve the symptoms; and any other factors concerning functional limitations and restrictions due to pain or other symptoms. SSR 96-7p, 1996 WL 374186 at *2.

Here, as the Court has noted, the ALJ found that the record revealed mild disorders of the lumbar spine. (Tr. 19.) For example, the ALJ noted that lumbar

spine imaging taken in August 2012 revealed a very mild disc bulge at L5/S1 and rudimentary at S1-2. (*Id*. at 369). In April 2013, an x-ray of the lumbar spine showed no fracture, pathologies, or severe dislocation, normal boney structures and well-maintained disc space. (*Id*. at 1097). In July 2013, after the alleged onset date, lumbar spine imaging showed no evidence of acute bony disease and well-maintained disc space. (*Id*. at 382). An April 2014 treatment record indicated lumbar x-rays were also unremarkable. (*Id*. at 804; *see also* 795 [January 2014 note noting unremarkable lumbar series], 914). The ALJ took these records indicating a mild lumbar spine disorder into consideration when formulating plaintiff's RFC. (*Id*. at 17, 19).

Nonetheless, the ALJ found that the intensity, persistence, and limiting effects of plaintiff's lumbar spine disorder were not as severe or debilitating as she claimed. Notably, the ALJ did not *wholly* discredit plaintiff's allegations of debilitating back pain; rather, he determined that her statement's concerning the intensity, persistence, and limiting effects of those symptoms were *not entirely* credible. The ALJ supported this finding with substantial evidence. For example, the ALJ found that clinical exams revealed functioning consistent plaintiff's RFC of light work and did not support the degree of impairment she alleged. Clinical exams from approximately May 2013 to May 2015 revealed no relevant abnormality and only occasional, minimal lumbrosacral tenderness. (Tr. 368, 387,

396-97, 562, 577, 599, 780-81, 783-84, 786, 789-90, 793, 796, 802, 805, 809, 812, 815, 818, 821, 824, 878, 886, 893,903, 912, 903, 936, 947, 953, 967, 1160, 1167, 1174, 1180, 1183, 1193, 1220). Furthermore, a May 30, 2013 note revealed that, while plaintiff reported her daily activities were limited by pain, it was relieved with medications, heat, ice reposition, and rest. (*Id*. at 368). Notes in June and July 2013 and January, February, March, and May 2014 revealed a fairly decent/moderate response to medication with no obvious adverse effects of medication and that plaintiff was able to perform activities of daily living, such as bathing, walking and housekeeping. (*Id*. at 786, 789, 795, 798, 801, 808). While plaintiff presented with reported worsening pain in September 2014 that interfered with routine tasks, such as housekeeping, she was treated with a trigger point injection. (*Id*. at 820-22). October 2014 and March and May 2015 notes indicate that plaintiff was still able to perform activities of daily living such as bathing, walking and housekeeping; in March and May 2015, plaintiff denied radiating pain. (*Id*. at 823, 1180, 1186). In February and April 2014, hospital physicians confirmed normal back exams with no tenderness, normal range of motion, and normal gait. (*Id*. at 904, 912).

And, contrary to plaintiff's allegations, the ALJ did consider the longitudinal treatment record as noted above. The ALJ also noted that plaintiff had limited and conservative treatment for her back pain after the alleged onset date, which did not

9

support the degree of impairment she alleged. For example, plaintiff was treated conservatively with medication, very limited injection therapy, and advised to walk more and continue aerobic exercise. (*Id.* at 779-825, 1180-1197, 1218); *see Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 863 (11th Cir. 2017) ("ALJs are permitted to consider the type of a treatment a claimant received in assessing the credibility of her subjective complaints."). The ALJ did not, as plaintiff argues, pick and choose records to support his conclusion; rather a review of the relevant medical records supports the ALJ's conclusion that, while there is evidence of a spine disorder, it is not disabling to the extent that plaintiff alleges.

Finally, Plaintiff argues that the ALJ erred in determining that her reported activities, such as managing her own hygiene, preparing meals, and shopping, were inconsistent with the presence of disabling symptoms and limitations. Again, the Court disagrees. For one, the ALJ did not solely rely on plaintiff's reported activities in making his credibility determination that her pain was not as disabling as she alleged. The ALJ also looked at plaintiff's overall conservative treatment, the fact that medication helped alleviate the pain in addition to the fact that, as discussed *supra*, she was able to continue activities of daily living such as bathing, walking, and housekeeping. Moreover, courts have upheld an ALJ's adverse credibility determination when it was based in part on the claimant's ability to perform limited household chores. *See, e.g.*, *Pennington v. Comm'r of Soc. Sec.*,

652 F. App'x 862, 872–73 (11th Cir. 2016) ("Moreover, an ALJ properly may rely on a claimant's daily activities in making credibility determinations."); *Parks v. Comm'r of Soc. Sec.*, 353 F. App'x 194, 197 (11th Cir. 2009) ("The ALJ expressly based the credibility determination on Parks' ability to take care of her personal needs, including errands, driving, and attending church, and the fact that her medication was controlling her pain. The record supports the ALJ's conclusion because it shows Parks was able to cook, clean, run errands, drive, and attend church weekly. Additionally, medical evidence shows Parks' medication reasonably controlled her pain."). The fact that plaintiff can point to other evidence supporting her allegations of disabling pain does not mean that the ALJ's credibility determination was not supported by substantial evidence. Therefore, the Court finds no error here.

### 2. Giving little weight to opinion of treating physician

Plaintiff argues that the ALJ erred when he gave little weight to the opinions of Dr. Clement Aluyi. In particular, plaintiff takes issue with the ALJ's decision to give little weight to Dr. Aluyi's June 2015 opinion that plaintiff "may" not be able to maintain an eight-hour workday on a consistent basis, would "likely" miss one to two days of work per month, and would possibly suffer adverse side effects from medication. (Tr. 1223).

The ALJ must give "substantial or considerable weight" to the opinion of a

treating physician unless good cause is shown. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (internal quotation marks and citation omitted). Good cause exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id*. at 1241. The ALJ must clearly articulate the reasons for affording less weight to a treating physician's opinions. *Id*.

The ALJ's decision to give Dr. Aluyi's opinion little weight is supported by substantial evidence. As the ALJ pointed out, Dr. Aluyi's opinions were inconsistent with the diagnostic imaging of record, his own treatment notes, and the effectiveness of conservative treatment. As the Court has already noted, the diagnostic imaging of record showed a very mild disc bulge as well as imaging showing well-maintained disc space and an xray indicating unremarkable findings. Dr. Aluyi's treatment notes also indicate conservative treatment with some pain improvement and ability to perform activities of daily living such as bathing, walking, and housekeeping. (*Id*. at 779-825). Moreover, Dr. Aluyi noted on several occasions that plaintiff had no obvious adverse effects of medication which conflicted with his June 2015 opinion regarding possible side effects from medication. (*Id*. at 779-825, 1179-99, 1223). Dr. Aluyi's June 2015 opinion is also inconsistent with his directions to walk and exercise. (*Id*.).

Finally, there is substantial evidence to support the ALJ's finding that Dr. Aluyi's June 2015 opinion was conclusory and lacked medical rationale for the functional limitations noted in it. There is simply nothing in the record to connect the dots between Dr. Aluyi's overall conservative treatment and his June 2015 conclusion that plaintiff may not be able to work eight hours in a day and would miss one to two days of work a month. Consequently, the Court finds that the ALJ did not err in this regard either. *See Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 894 (11th Cir. 2013) ("Forsyth also claims that the ALJ erred by rejecting Dr. Chodosh's opinion that Forsyth would be unable to work up to 30 percent of the time when her MS was relapsing. Chodosh did not explain how he came to this conclusion, and his own examination of Forsyth revealed that she had normal motor function, strength, balance, and gait and that she was able to squat and rise. The ALJ did not err by concluding that Chodosh's opinion was not supported by his treatment records.").

## III. CONCLUSION

For these reasons, and the Court otherwise being otherwise sufficiently advised, it is ORDERED that the final decision of the Commissioner is AFFIRMED. A final judgment will be entered separately.

**DONE** this December 3, 2018.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE